```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

LAWRENCE THOMAS,

        Plaintiff,

  v.

CUMBERLAND COUNTY, et al.,

        Defendants.

Civil Action
No. 09-1323 (JBS/JS)

**OPINION**

APPEARANCES:

William Riback, Esq.
Lauren Plevinsky, Esq.
WILLIAM RIBACK, LLC
132 Haddon Avenue
Haddonfield, NJ 08033
    Attorney for Plaintiff

Steven L. Rothman, Esq.
LIPMAN, ANTONELLI, BATT, GILSON, MALESTEIN, ROTHMAN & CAPASSO
110 N. Sixth Street, PO Box 729
Vineland, NJ 08362
    Attorney for Defendants

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

    This matter is before the Court on three motions in limine filed by Defendant Corrections Officer Martinez [Docket Items 141, 142, & 145], and one motion in limine filed by Plaintiff Lawrence Thomas [Docket Item 140].[1]

---

[1] Defendant also filed a duplicative motion in limine [Docket Item 143] in error.  The Court will deny that motion as duplicative, it having been subsequently supplanted by the later filed Docket Item 145.

**II.   BACKGROUND**

Plaintiff's sole remaining claim in this action is that Defendant Martinez, a corrections officer who was present at a fight where Plaintiff was injured by other inmates, incited the fight and/or failed to protect Plaintiff from the other inmates, thereby violating his Fourteenth Amendment due process rights, protected under 42 U.S.C. § 1983.

On June 4, 2008, Plaintiff entered Cumberland County Correctional Facility on a failure to appear warrant but, as of the date of his injuries, Plaintiff had not been convicted of his alleged crime or violation.  Plaintiff was therefore a pretrial detainee at the time of his injuries.  On July 27, 2008, the fight and Plaintiff's ensuing injuries occurred.  Plaintiff and a group of inmates engaged in an argument in which Plaintiff was accused of stealing food from other inmates.  The argument began on the mezzanine level of the unit between Plaintiff (an African American individual) and several Hispanic inmates.

Defendant Martinez was present on the mezzanine before the attack occurred, and was among the crowd of angry inmates. Plaintiff claims that Defendant Martinez then said something to incite a fight.  There are numerous accounts of what Martinez said, including: "[i]f you guys don't fight or break it up, I'm going to lock everybody down," Thomas Dep. 78:14-15; "Fuck this

shit, if you guys ain't going to fight, break it up or I'm going to lock the whole damn pod down," Thomas Dep. 62:23-63:2; and "[i]f you ain't going to fight sit down and break it up," Chasmer Dep. 18:11-15.

According to Plaintiff and other witnesses, the crowd did not disperse after Defendant's statement, but rather it increased the temperature of the dispute.  Plaintiff then claims he decided he needed to seek the protection of the other officer present in the unit (Officer Wilde, previously dismissed from this action), who was downstairs from Plaintiff at the time of Defendant's allegedly inciting statement.  So Plaintiff made his way downstairs.  When he reached the bottom of the stairs, testimony differs as to where he headed next; some witnesses stated that Plaintiff made his way, in a confrontational manner, toward another inmate who had been yelling up the stairs at him (inmate Santiago); Plaintiff testified that he merely attempted to get close to Officer Wilde.  Regardless, Thomas's path was blocked when he reached the bottom of the stairs, so he attempted to get around the crowd, whereupon he was struck by inmate Santiago and another inmate (Cruz), and he sustained his injuries.

Defendant Martinez physically restrained Santiago shortly after the first blow was struck, but Cruz continued to strike Plaintiff, after which Defendant Martinez yelled for everyone on the unit to lock down, and the fight ceased.

**III. DISCUSSION**

   **A.  Plaintiff's Motion**

In his motion, Plaintiff seeks to exclude (1) any reference to or evidence of Plaintiff's prior arrests, misdemeanor convictions, and felony convictions older than ten years, and past incarcerations in the detention facility; (2) any reference to Plaintiff as a "thief"; (3) any reference to or evidence of Plaintiff's methadone treatment or prior drug addiction; and (4) the testimony of Defendant's liability expert witness because the expert opinion will not aid a jury as contemplated by Fed. R. Evid. 702, and it is otherwise a net opinion.

      1.  <u>Evidence of prior methadone treatment</u>

Plaintiff seeks to exclude any evidence of Plaintiff's prior drug addiction or methadone treatment.  Defendant does not object to this request.  Accordingly, the Court grants Plaintiff's motion as to this request.

      2.  <u>Reference to prior convictions</u>

Plaintiff seeks to exclude evidence of Plaintiff's prior criminal history.  Plaintiff's conviction history is no where listed comprehensively for the Court.  Plaintiff represents that he was convicted of two separate felonies (subject to imprisonment for more than one year) for drug possession in the late 1990s.  He was released from prison for these two convictions on March 21, 2002, though he was returned to custody

4

on a parole violation on September 14, 2002 and released from custody again a little over a year later on October 3, 2003. Additionally, he was arrested for weapons possession in the 1970s, shoplifting in 2006, and failure to appear in 2008 for which he was detained at Cumberland County Correctional Facility during the events at issue in this case and subsequently convicted.

Plaintiff seeks an order barring the introduction of any evidence or testimony, even through cross examination, of these past convictions or arrests. Plaintiff argues that none of the prior convictions are admissible under Fed. R. Evid. 609, or are "relevant" to any question of fact under Fed. R. Evid. 401 and 402, plus Plaintiff argues that even if they are minimally probative of something, they should be excluded as unduly prejudicial under Fed. R. Evid. 403.

Defendant does not oppose the motion on this point with one exception: Defendant seeks to permit testimony regarding "the violation in 2007 which plaintiff admits to." The Court assumes by this reference, Defendant means to refer to the charge of failure to appear from 2008 which was the basis of Plaintiff's incarceration at the time of the events at issue. Defendant offers no argument regarding why the substance of Plaintiff's arrest would be relevant or otherwise admissible. The conviction was not a felony, and the Court cannot readily determine that the

5

elements of the crime required proving a dishonest act as would be required to be admissible under Fed. R. Evid. 609. Therefore, the Court will grant Plaintiff's motion to exclude evidence of Plaintiff's prior convictions.

### 3. Reference to Plaintiff as a "thief"

Plaintiff argues that any testimony referring to himself as a "thief" should be barred as prejudicial and not relevant, and inadmissible hearsay not falling within any exception to the hearsay rules under Fed. R. Evid. 802-804. The Court will deny Plaintiff's motion on this point.

A declaration is generally inadmissible under Rule 802, if the statement is "hearsay", which is defined as an out-of-court statement offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Therefore, a statement of, say, inmate witness Bruce Chidres that Plaintiff "liked to cut lines, take people's stuff and stuff like that" would be hearsay if it were offered simply as deposition testimony to prove the truth of the statement that Plaintiff liked to take things from other people. However, if Mr. Childres were to testify in court that he observed Plaintiff taking things from another person, it would not be hearsay because it would no longer be an out-of-court statement. Alternatively, if Mr. Childres were to testify in Court that he heard other inmates accusing Plaintiff of stealing as part of their justification for starting a fight, it

6

would not be hearsay because the statement would not be offered to prove the truth of the matter -- that Plaintiff stole from other inmates -- but rather to prove the state of mind of the inmates who were confronting Plaintiff and why the fight may have broken out.  Callahan v. A.E.V., Inc., 182 F.3d 237, 252 (3d Cir. 1999) (statements considered under the state of mind exception under Fed. R. Evid. 803(3) cannot be offered to prove the truth of the underlying facts asserted, but only for the limited purpose of proving declarant's state of mind or motive).  Therefore, because one issue to be decided by the jury in this case is how and why the fight broke out, the state of mind of the inmates accusing Plaintiff of theft is relevant, as is the state of mind of Defendant Martinez, who would have heard such statements.  Therefore, the Court will deny Plaintiff's motion as to this point.

        4.   Defendant's Expert Harry Chance

Plaintiff also argues that the testimony of Defendant's witness, Harry Chance, should be excluded because his opinion is not the result of reliable principles and methods; it would not aid the jury in an issue requiring expert testimony; it would only confuse the jury; and it is a net opinion.  Under New Jersey law, an "expert's bare conclusions, unsupported by factual evidence" is an inadmissible net opinion.  Holman Enterprises v. Fid. & Guar. Ins. Co., 563 F. Supp. 2d 467, 472 (D.N.J. 2008)

(quoting Buckelew v. Grossbard, 87 N.J. 512, 435 A.2d 1150, 1156 (1981)). The "net opinion" rule is neither an evidentiary rule under the Federal Rules of Evidence nor a factor in the Daubert analysis, but it is merely a restatement of the "well-settled principle that an expert's bare conclusions are not admissible under the fit requirement of Rule 702." Id.

The admissibility of expert witness testimony is governed by Rule 702, Fed. R. Evid., and the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. Rule 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the Supreme Court explained in Daubert, district court judges perform a "gatekeeping role," 509 U.S. at 596, by assessing whether expert testimony is both relevant and methodologically reliable in order to determine whether it is admissible under Rule 702. Id. at 590-91; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 146-47 (1999) (holding that Daubert extends to testimony about "technical or other

8

specialized knowledge") (internal quotations and citations omitted).

Under the law of this Circuit, when an evidentiary challenge is raised, Daubert and Rule 702 call upon the Court to examine the admissibility of expert testimony in light of three factors: the qualifications of the expert, the reliability of his or her methodology and the application of that methodology, and whether the testimony fits the matters at issue in the case. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994).

With regard to the reliability of the expert's methodology, the Court must determine whether the process or technique the expert used in formulating the opinion is reliable. Pineda, 520 F.3d at 244. While a litigant has to make more than a prima facie showing that his expert's methodology is reliable, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness." Id. at 247 (quoting Paoli, 35 F.3d at 744). The party seeking to admit the expert testimony must demonstrate by a preponderance of the evidence that the expert's opinions are reliable. Paoli, 35 F.3d at 744.

In deciding whether a particular methodology is reliable, the Court should consider eight factors, enunciated in Daubert and United States v. Downing, 753 F.2d 1224 (3d Cir. 1985), which include: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the

known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Pineda, 520 F.3d at 247-48.  This inquiry is flexible, and these factors are neither exhaustive or applicable in every case. Id.

Defendant proffered Mr. Chance as an expert in the field of corrections.  Mr. Chance offered three opinions, only two of which are relevant or proposed to be offered at trial.  Mr. Chance opined that (1) the root cause of this incident is directly attributed to the actions of Plaintiff and his behavior on in the cell block on the date in question and (2) Defendant Martinez responded immediately and accordingly when inmate Santiago assaulted Plaintiff.

Mr. Chance states that the reasons for his opinions are (1) the behavior of Plaintiff and (2) Defendant intervened and stopped the assault.  With regards to Mr. Chance's first reason, the behavior of Plaintiff, Mr. Chance gives an account of the events, but does not explain his methodology or how he came to his conclusions, other than stating that he relied on the deposition testimony of witnesses.  With regards to his second

10

reason, Defendant's actions, Mr. Chance explains that "[b]ased on [his] years of knowledge and experience, CO Martinez responded as well as can be expected under the circumstances regardless of the level of training he may or may not have received."  Chance Rept. at 5.

As noted in this Court's December 22, 2011 Opinion [Docket Item 121], in <u>Lasorsa v. Showboat: The Mardi Gras Casino</u>, Civ. No. 07-4321, 2009 WL 2929234, at *4 (D.N.J. Sep. 9, 2009), "there is no reliable foundation for [an expert's] expert testimony" when an expert would "seem[ ] to base his conclusions on his own authority . . . [w]ithout 'industry standards' to rely upon," . . . . [b]ecause 'knowledge connotes more than subjective belief or unsupported speculation.'"  In <u>Lasorsa</u>, this Court found that the expert's testimony should be precluded under Rule 702 because it lacked a "reliable, objective basis . . . stemming from identifiable industry standards, codes, publications or training."

The defense has failed to establish that Mr. Chance's testimony regarding the events of July 27, 2008, is reliable by a preponderance of the evidence.  See <u>Paoli</u>, 35 F.3d at 744. Specifically, he has not shown that his testimony amounts to anything more than his own subjective belief and unsupported speculation of what occurred on that day, or, alternatively, mere repetition of the testimony offered by other witnesses which do

not require an expert's explanation to render comprehensible to a jury.  Mr. Chance makes no reference to industry standards, codes, publications, training, or anything other than his own years of knowledge and experience.  As Mr. Chance has failed to explain his methodology, the Court is unable to consider its reliability against the eight factors articulated in <u>Daubert</u> and <u>Downing</u>.

Additionally, as to "fit" of the expert's testimony, the Court likewise finds the opinion testimony of Mr. Chance lacking.  Because Rule 702 demands that the expert testimony assist the trier of fact, such testimony will be admissible only if there is "a valid scientific connection" between the expert's testimony and the facts and issues in the case in order for the expert's testimony to be admissible. <u>Paoli</u>, 35 F.3d at 743.  In the present case, Mr. Chance offers nothing more than his own interpretation of events as described in the testimony of witnesses.  As the testimony of the witnesses is not so technical or complex that an explanatory opinion would be helpful to the jury, these explanations are not admissible as they fail the "fit" prong of Rule 702.

Therefore, because Mr. Chance has failed to establish the reliability of his methodology or the fit of his opinion to the facts of the case, this testimony is inadmissible, and the Court will grant Plaintiff's motion in limine to exclude it.

**B.   Defendant's First Motion in Limine: Seitzinger Opinion Testimony**

Defendant's first motion in limine seeks to exclude the opinion testimony of Investigator James Seitzinger on issues outside the scope of his competence as a fact witness, on topics such as the practices of the Cumberland County Correctional Facility and the relative safety or "toughness" of the jail. Defendant objects to the admissibility of Investigator Seitzinger's opinions on the ground that Investigator Seitzinger has not been qualified as an expert as required to offer expert opinion testimony under Fed. R. Evid. 702.

Investigator Seitzinger was an investigator at CCCF at the time of Plaintiff's injuries, and he was assigned the task of investigating the fight after it occurred.  He interviewed the participants in the fight, and was later deposed as a fact witness by Plaintiff's attorney.  Defendant does not object to Seitzinger's fact witness testimony.  However, in the course of his deposition testimony, Seitzinger offers various opinions and observations such as the fact that there were probably four to five fights between inmates in the CCCF every single day that he worked there (that were reported, and speculated that the actual number was much higher), and that new or untrained officers are generally more prone to "freezing" and not calling for backup sufficiently quickly when a fight breaks out, and that the CCCF

13

(Cumberland County) has a 'tough reputation' for its gang violence.

Defendant objects to the introduction of this testimony as not being admissible as expert opinion testimony because Seitzinger is not a qualified expert. The Court will deny Defendant's motion because Plaintiff has responded in opposition that he does not intend to call Seitzinger as an expert, but rather to provide lay opinion testimony under Fed. R. Evid. 701.

> A lay witness may testify as to opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

United States v. Clark, Slip Op. No. 10-4769, 2012 WL 3009234 *4 (3d Cir. July 24, 2012) (quoting Fed. R. Evid. 701). Unlike the proffered testimony of Harry Chance above, the testimony of James Seitzinger is lay opinion testimony based upon his own perceptions of the Cumberland County Jail based upon his own observations there. Under this rule, the Court concludes that Plaintiff may solicit opinions of Inspector Seitzinger regarding his perceptions of the CCCF based on his personal observations of the institution gathered during the years he worked there.[2]

---

[2] The Court does not determine at this time whether Seitzinger's testimony is based upon observatinos that are recent enough to be probative or whether any probative value is substantially outweighed by undue prejudice to Defendant under Rule 403, Fed. R. Evid., pending further argument at trial.

### C. Defendant's Second and Third Motions in Limine: Expert Kiekbusch

Finally Defendant next moves to exclude the expert testimony of Plaintiff's expert Dr. Kiekbusch based on the "fit" of Dr. Kiekbusch's opinions to the issues remaining for trial. Plaintiff opposes Defendant's motions on the grounds that Dr. Kiekbusch's fourth and fifth opinions adequately fit the remaining claims against Defendant Martinez and would assist the trier of fact in resolving the issue of Defendant Martinez's subjective culpability.

Dr. Kiekbusch offers five opinions in his report. The first three involve his opinions regarding the County and Facility's administration's failure to adequately train and supervise Defendant Martinez. The fourth opinion is that Defendant Officer Martinez failed to intervene "in the mounting inmate tension and unrest" that preceded the assault on Plaintiff. The fifth opinion is that Defendant Officer Martinez "failed to call for back-up" until after "it must have become obvious that the situation in D-Pod had already exceeded, or was soon to exceed, the ability of the two pod officers to control it on their own."

The Court will grant Defendant's motion to exclude the first three opinions, which is not opposed by Plaintiff. However, the Court will deny Defendant's motion as to the fourth and fifth opinions. The Court finds that these opinions would assist the trier of fact in determining the question of whether Defendant

Martinez had the requisite mental state of deliberate indifference to a serious risk to Plaintiff's safety.  Dr. Kiekbusch reasons in support of his fifth opinion that, based on his experience in the industry and on his evaluation of the conditions as they existed in Plaintiff's cell block, "with tension running high among D-Pod's inmates, it must have been exceedingly clear to Officer Martinez that he and Officer Wilde had a situation on their hands that they would not be able to control by themselves."  Kiekbusch Rep. at 16.  The Court agrees with Plaintiff that this opinion and reasoning would assist the jury in evaluating Defendant Martinez's conduct.  Accordingly, the Court will deny Defendant's motion in limine as to the fourth and fifth opinions of Dr. Kiekbusch.

   Defendant's third motion in limine also seeks to bar evidence and testimony concerning the classification of inmates employed by the Cumberland County Correctional Facility administrators, the discretion of the prison warden, sanctions or discipline imposed on Defendant Martinez by his supervisors as a result of Plaintiff's injuries, and all evidence regarding Plaintiff's medical bills or expenses that were paid by Cumberland County, which are therefore not recoverable as damages.  Plaintiff does not oppose any of these requests, and

16

the Court will therefore grant Defendant's requests on these points.[3]

## IV. CONCLUSION

Based on the foregoing, the Court will make the following rulings:

(1) Plaintiff's motion [Docket Item 140] in limine will be granted in part and denied in part.  Defendant will be barred from introducing evidence of Plaintiff's history of drug addiction and methadone treatment, his prior criminal and incarceration history.  Defendant will also be barred from introducing the expert report or expert opinion testimony from Defendant's liability expert Harry D. Chance.  However, Defendant will not be barred from introducing non-hearsay testimony referring to Plaintiff as a thief.

(2) Defendant's motion [Docket Item 142] regarding lay witness opinion testimony of Investigator James Seitzinger will be denied.

---

[3] The contours of evidence about the characteristics of fellow inmates confined in D-Pod may be relevant and probative; since this case involves the rights of a pretrial detainee, evidence of the manner of assignment of inmates with whom he was confined (whether sentenced or detained, whether violent or non-violent) may be admissible.  The present motion was not refined with specificity to enable such determinations to be made at this pretrial phase, so this aspect should be proffered by Plaintiff for determination before such evidence may be introduced.

(3) Defendant's motions [Docket Items 141 & 145] regarding Plaintiff's expert Dr. Kiekbusch will be granted in part and denied in part; it will be granted as to Dr. Kiekbusch's first three opinions, but denied as to Dr. Kiekbusch's fourth and fifth opinions.

(4) Defendant's third motion [Docket Item 145] will likewise be granted as to Defendant's other requests.  The Court will exclude evidence and testimony related to Cumberland County Correctional Facility's classification of inmates, the scope of discretion of the Warden, any disciplinary sanctions imposed on Defendant Martinez by his supervisors, and Plaintiff's medical bills stemming from his injuries that have been paid by Cumberland County.

The accompanying Order will be entered.

**August 30, 2012**             **s/ Jerome B. Simandle**
Date                              JEROME B. SIMANDLE
                                      Chief U.S. District Judge